UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EMAD KASHKEESH and MICHAEL KOMORSKI, individually and on behalf of a class of similarly situated individuals, | )<br>)<br>)<br>) | 21 C 3229 |
| Plaintiffs, | )<br>) | Judge Gary Feinerman |
| vs. | )<br>) | |
| MICROSOFT CORPORATION, | )<br>) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Emad Kashkeesh and Michael Komorski brought this putative class action in the Circuit Court of Cook County, Illinois, against Microsoft Corporation, alleging violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*. Doc. 1-1. Microsoft removed the suit to federal court, Doc. 1, and Plaintiffs move to remand two of their claims back to state court, Doc. 36. The motion is granted.

**Background**

Plaintiffs are former Uber drivers who worked primarily in Chicago. Doc. 28 at ¶¶ 32, 38. Upon registering as Uber drivers, each was required to submit his name, vehicle information, driver's license, and a profile picture to Uber through its mobile application. *Id*. ¶¶ 23, 32, 38. To gain access to Uber's platform and commence his driving duties, each had to photograph his face in real time through Uber's "Real Time ID Check" security feature. *Id*. at ¶¶ 33, 39. Unbeknownst to Plaintiffs, their pictures were transferred to Microsoft's Face Application Programming Interface ("Face API"), which is integrated into Uber's phone application as a security feature. *Id*. at ¶¶ 23-25. Microsoft's Face API collected and analyzed

1

Plaintiffs' facial biometrics to create a "geographic template" that it compared to the geographic template from the original profile picture to verify their identities. *Id*. at ¶¶ 25-26, 34, 40.

Microsoft never obtained Plaintiffs' written consent to capture, store, or disseminate their facial biometrics. *Id*. at ¶¶ 28, 35, 41. Microsoft also failed to make a publicly available policy regarding retention and deletion of their biometric information, and it profited from receiving that information. *Id*. at ¶¶ 29-30, 36, 42.

## Discussion

"The party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). In an uncommon twist on a common theme, Plaintiffs argue that, in light of *Bryant v. Compass Group USA, Inc.*, 958 F.3d 617 (7th Cir. 2020), and *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241 (7th Cir. 2021), they lack Article III standing to pursue in federal court their claims under Sections 15(a) and 15(c) of BIPA, 740 ILCS 14/15(a), (c), requiring the remand of those claims for want of subject matter jurisdiction. Microsoft responds that Plaintiffs have Article III standing because (1) their Section 15(a) claim alleges an "informational injury" sufficient to confer standing under the principles set forth in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), and (2) their Section 15(c) claim alleges the disclosure of private information sufficient to confer standing under the principles set forth in *TransUnion* and *Tims v. Black Horse Carriers, Inc.*, 184 N.E.3d 466 (Ill. App. 2021), *appeal allowed*, 184 N.E.3d 1029 (Ill. 2022).

A federal court has subject matter jurisdiction over a claim only if, among other things, the plaintiff has Article III standing to bring it. *See MAO-MSO Recovery II, LLC v. State Farm*

*Mut. Auto. Ins. Co.*, 935 F.3d 573, 581 (7th Cir. 2019). "[T]he irreducible constitutional minimum of standing consists of three elements. [A] plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation and internal quotation marks omitted). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id*. at 339 (internal quotation marks omitted).

To be concrete, a plaintiff's injury "must be de facto; that is, it must actually exist," meaning that it must be "real" and not "abstract." *Ibid*. (internal quotation marks omitted). Both "tangible" and "intangible" injuries, even those that are "difficult to prove or measure," can be concrete. *Id*. at 341. Concreteness requires at least some "appreciable risk of harm" to the plaintiff. *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 727 (7th Cir. 2016); *see also Spokeo*, 578 U.S. at 342 (holding that an injury is not concrete where the defendant's conduct does not "cause harm or present any material risk of harm"); *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 911 (7th Cir. 2017) (holding that the plaintiff lacked standing where he identified no "plausible (even if attenuated) risk of harm to himself").

**I.      Section 15(a) Claim**

Section 15(a) of BIPA requires "[a] private entity in possession of biometric identifiers or biometric information" to "develop," "ma[k]e available to the public," and "comply with" "a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information" at certain junctures. 740 ILCS 14/15(a). In *Bryant*, the plaintiff alleged that the defendant, in violation of Section 15(a), collected and stored her biometric information—which

3

she provided when using the defendant's fingerprint-based vending machines—without making "publicly available a retention schedule and guidelines for permanently destroying the biometric identifiers and information it was collecting and storing." 958 F.3d at 619. *Bryant* held that the plaintiff lacked standing to bring that claim, reasoning that standing cannot rest on a mere violation of Section 15(a)'s publication duty. *See id*. at 626. The Seventh Circuit reaffirmed that holding in *Fox v. Dakkota Integrated Systems, LLC*, 980 F.3d 1146, 1154 (7th Cir. 2020). But *Fox* proceeded to hold that while "a mere failure to *publicly disclose* a data-retention policy" is insufficient to confer standing, a failure to "*comply with*" the policy under Section 15(a) is sufficient. *Id*. at 1154-55 (first emphasis added).

Like the plaintiff in *Bryant*, and unlike the plaintiff in *Fox*, Plaintiffs here allege only that Microsoft failed to disclose its retention and destruction policy, not that it failed to comply with that policy. Doc. 28 at ¶¶ 29, 36, 42, 56; Doc. 36 at 6. Under *Bryant* and *Fox*, it follows that Plaintiffs lack Article III standing to bring their Section 15(a) claim.

Pressing the contrary result, Microsoft argues that *TransUnion* undermined *Bryant*. Specifically, Microsoft contends that *TransUnion* "reaffirmed precedent"—*Federal Election Commission v. Akins*, 524 U.S. 11, 21 (1998), and *Public Citizen v. Department of Justice*, 491 U.S. 440, 449 (1989)—"holding that 'downstream consequences' are not required where, as here, the plaintiff allegedly 'fails to obtain information which must be publicly disclosure pursuant to a statute.'" Doc. 43 at 10 (quoting *Akins*, 524 U.S. at 21). But *Bryant* expressly considered and distinguished *Akins* and *Public Citizen* in ruling that a mere failure to comply with Section 15(a)'s disclosure duty does not give rise to Article III standing. *See Bryant*, 958 F.3d at 624-25. That *TransUnion* reaffirmed *Akins* and *Public Citizen* therefore has no impact, one way or the other, on the continued viability of *Bryant*.

Microsoft also contends that *TransUnion* made clear, contrary to *Bryant*, that an informational injury can support Article III standing where, as here, the plaintiff alleges "denial of information subject to public-disclosure or sunshine laws that entitle all members of the public to certain information." *TransUnion*, 141 S. Ct. at 2214; *see* Doc. 43 at 7. That contention fails to persuade. As an initial matter, *TransUnion* "d[id] not involve such a public-disclosure law," 141 S. Ct. at 2214, and thus cannot properly be read to implicitly overrule *Bryant*'s holding that the mere violation of such a law does not give rise to Article III standing. In any event, the Seventh Circuit adhered to *Bryant*'s holding in a post-*TransUnion* opinion that, in fact, cited *TransUnion*. *See Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156, 1161 (7th Cir. 2021) (holding that a plaintiff alleging a Section 15(d) violation suffered Article III injury, and reasoning that "Section 15(d) is … unlike other sections of [BIPA] that impose duties owed only to the public generally—the violation of which does not, without more, confer standing.") (citing *Bryant*, 958 F.3d at 626, for the proposition that "a violation of section 15(a)'s duty to provide a data-retention schedule to the public does not inflict an Article III injury"). From the perspective of a federal district court, *Cothron* defeats Microsoft's submission that *TransUnion* fatally undermines *Bryant*.

Accordingly, Plaintiffs lack Article III standing to pursue their Section 15(a) claim.

**II.    Section 15(c) Claim**

Section 15(c) of BIPA prohibits private entities in possession of biometric information from "sell[ing], leas[ing], trad[ing], or otherwise profiting from a person's or customer's biometric … information." 740 ILCS 14/15(c). In *Thornley*, the plaintiffs alleged that the defendant violated Section 15(c) by harvesting their biometric information, placing it on a database, and offering it for sale. *See* 984 F.3d at 1243. As *Thornley* understood it, Section

15(c) establishes a general regulatory rule, imposing on defendants a duty owed to the public at large "prohibit[ing] the operation of a market in biometric identifiers and information." *Id*. at 1247. And *Thornley* held that such a general regulatory rule, like the one imposed by Section 15(a), is insufficient to create Article III standing absent an assertion that the plaintiff suffered a particularized injury resulting from the operation of such a market. *See ibid*. ("It is enough to say that this is the same kind of general regulation as the duty to create and publish a retention and destruction schedule found in section 15(a), at least when the plaintiff asserts no particularized injury resulting from the commercial transaction.").

The Seventh Circuit's holding in *Thornley*—that Article III standing cannot rest on a mere violation of Section 15(c)—rests on the premise that Section 15(c) imposes only a "general regulation." *Ibid*. But the Appellate Court of Illinois subsequently rejected that premise in *Tims*, holding that Section 15(c) creates an action "for publication of matter violating the right of privacy." 184 N.E.3d at 466 ("Section 15(c) … forbids a private party to 'sell, lease, trade, or otherwise profit from' biometric data which entails a publication, conveyance, or dissemination of such data.") (internal citations and quotation marks omitted). That is significant to the Article III inquiry, as the disclosure of private information is a harm "traditionally recognized as providing a basis for lawsuits in American courts," and therefore one sufficient to predicate Article III standing. *TransUnion*, 141 S. Ct. at 2204.

Thus, the question whether Plaintiffs have Article III standing to pursue their Section 15(c) claim in federal court turns on whether, from the perspective of this court, the state appellate court's decision in *Tims* undermines the Seventh Circuit's understanding in *Thornley* of the nature of a Section 15(c) claim. Under the Seventh Circuit's view of the *Erie* doctrine, the answer to that question is no:

> A decision by a state's supreme court terminates that authoritative force of our decisions interpreting state law, for under *Erie* our task in diversity litigation is to predict what the state's highest court will do. Once the state's highest court acts, the need for prediction is past. But decisions of intermediate state courts lack similar force; they, too, are just prognostications. They could in principle persuade us to reconsider and overrule our precedent; assuredly they do not themselves liberate district judges from the force of our decisions.

*Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004). And because the Seventh Circuit's understanding of Section 15(c) as imposing a general regulatory rule retains its precedential force notwithstanding the state appellate court's contrary understanding in *Tims*, Plaintiffs do not have standing to pursue their Section 15(c) claim in federal court.

## Conclusion

Because Plaintiffs do not have Article III standing to pursue their Section 15(a) and 15(c) claims, their motion to remand those claims is granted. When a case is filed in state court and removed to federal court, and when the federal court finds that it lacks subject matter jurisdiction, the appropriate disposition (with narrow exceptions not pertinent here) is remand to state court under 28 U.S.C. § 1447(c). *See Collier v. SP Plus Corp.*, 889 F.3d 894, 897 (7th Cir. 2018) ("[Section] 1447(c) required the district court to remand this case to state court, because it does not satisfy Article III's requirements."). Where, as here, the court lacks jurisdiction over only a portion of a suit, it should remand only that portion. *See Bergquist v. Mann Bracken, LLP*, 592 F.3d 816, 819 (7th Cir. 2010) ("Federal law does not permit a district judge to remand the complete litigation just because portions belong in state court. … If some parts of a single suit are within federal jurisdiction, while others are not, then the federal court must resolve the elements within federal jurisdiction and remand the rest—unless the balance can be handled under the supplemental jurisdiction."). Accordingly, the Section 15(a) and 15(c) claims are severed under Civil Rule 21 from the rest of the suit and remanded to state court. *See Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 443-44 (7th Cir. 2006) (approving severance where

7

"[t]he validity of the claims before us does not depend, as a matter of law, on the outcome of the severed claims"); *Hebel v. Ebersole*, 543 F.2d 14, 17 (7th Cir. 1976) (approving the severance of "logically separable" claims); *Figueroa v. Kronos Inc.*, 2020 WL 4273995, at *5 (N.D. Ill. July 24, 2020). If the Supreme Court of Illinois, whether in the appeal it allowed in *Tims* or at any other juncture, adopts the state appellate court's understanding in *Tims* of the nature of a Section 15(c) claim, Microsoft may once again attempt to remove that claim to federal court.

June 29, 2022

_____
United States District Judge

8