UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EMAD KASHKEESH and MICHAEL KOMORSKI, | |
| Plaintiffs, | No. 21 CV 3229 |
| v. | Judge Manish S. Shah |
| MICROSOFT CORP., | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Emad Kashkeesh and Michael Komorski were Uber drivers. As part of their work, they used facial recognition software provided by defendant Microsoft Corp. Kashkeesh and Kormorski worked under contracts with Uber. Microsoft wasn't a signatory or named party to the contract. Plaintiffs filed suit against Microsoft in state court, alleging that defendant violated the Illinois Biometric Privacy Act. Microsoft removed the case to federal court. More than a year and a half later, Microsoft learned that Kashkeesh and Komorski agreed to arbitrate certain claims based on Uber's platform and app. Microsoft moves to compel arbitration. For the reasons explained below, the motion is granted.

**I.  Legal Standards**

To compel arbitration, Microsoft must show "(1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Druco Restaurants, Inc. v. Steak N Shake*

*Enterprises, Inc.*, 765 F.3d 776, 781 (7th Cir. 2014) (quoting *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006)). The Federal Arbitration Act requires courts "to enforce covered arbitration agreements according to their terms," *Lamps Plus, Inc. v. Varela*, 139 S.Ct. 1407, 1412 (2019) (citing 9 U.S.C. § 2), and put arbitration agreements on an equal footing with other contracts. *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).

## II. Background

Plaintiffs Emad Kashkeesh and Michael Komorski were drivers for the ridesharing and food delivery company Uber. [28] ¶¶ 1, 32, 38.[1] As part of their work, Kashkeesh and Komorski were required to take pictures of their faces through Uber's "Real Time ID Check" software. *Id.* ¶¶ 33, 39. They were also required to submit identifying information to Uber, including their name, vehicle information, and driver's license. *Id.* ¶ 23.

Uber's "Real Time ID Check" used defendant Microsoft's Face Application Programming Interface to identify drivers. *See* [28] ¶¶ 18–23, 26. After Uber drivers—including Kashkeesh and Komorski—submitted their photographs to Uber's program, Microsoft's software extracted facial biometrics to create geometric

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of the filings. The facts are taken from the second amended complaint, [28], and from the exhibits attached to the parties' briefs. *See* [93]; [94]; [99-1]; [99-4].

2

templates, and compared those templates with information corresponding to the employees, identifying them. *See id.* ¶¶ 25, 34, 40.

Kashkeesh and Komorksi never agreed that Microsoft could capture, store, or disseminate their facial biometrics, were never told that Microsoft was gathering their information, and Microsoft never published a policy about the company's retention and deletion of biometric information. *See* [28] ¶¶ 35–36, 41–42.

Plaintiffs worked under contracts with Uber, signing the company's 2020 Platform Access Agreement. *See* [99-4]; [93] ¶¶ 14–17. Those contracts included an arbitration clause, requiring Kashkeesh and Komorski to arbitrate (among other things) any dispute between themselves and "any other entity [other than Uber] ... arising out of or related to your application for and use of an account to use [Uber's] Platform and Driver App as a driver." [99-4] at 14–16.

Kashkeesh and Komorski filed a lawsuit against Microsoft in state court in May 2021, alleging that defendant violated the Illinois Biometric Privacy Act. [1-1] at 5. Microsoft removed the case to federal court on June 16, 2021, [1], and filed a motion to dismiss for lack of personal jurisdiction. [23].[2] Plaintiffs filed a motion to remand two of their claims, [36], which Microsoft opposed, [43]. That motion was granted, but some of plaintiffs' claims remained in federal court. *See* [62]. The parties conducted limited jurisdictional discovery, *see* [42], and defendant's motion to dismiss

---

[2] Microsoft has shown that diversity jurisdiction exists under the Class Action Fairness Act because Kashkeesh and Komorski are citizens of Illinois, Microsoft is a citizen of Washington, the amount in controversy exceeds $5 million, and plaintiffs want to represent a class in excess of 100 members. *See* [1] ¶¶ 12, 14–18; [28] ¶¶ 3–6; 28 U.S.C. § 1332(d).

(renewed after amendments to the complaint), was denied on December 13, 2022. [82]. On the same day—December 13—Uber informed Microsoft for the first time that Kashkeesh and Komorski had agreed to the 2020 Platform Access Agreement. [94] ¶ 2. About a month later, Microsoft learned the specific dates that plaintiffs had accepted the agreement. *Id.* ¶ 3.

Microsoft answered the complaint, asserting (among other defenses), that plaintiffs' claims had to be arbitrated. *See* [85] at 29. Six weeks later (in February 2023), Microsoft filed a motion to compel arbitration. [91].

## III. Analysis

There's no dispute that the arbitration agreements are valid and enforceable. *See* [99]. Instead, the issues are (1) whether Microsoft (a non-signatory) can enforce the contracts as a third-party beneficiary, and (2) whether defendant waived its right to compel arbitration.

### A. Third-Party Beneficiary

Under Illinois law, there's a strong presumption against conferring contractual benefits on noncontracting third parties.[3] *See Sosa v. Onfido Inc.*, 8 F.4th 631, 639

---

[3] Whether Microsoft has a right to compel arbitration is an issue of contract formation, and must be decided by the court (regardless of the agreements' delegation clause). *See* [99-4] at 15, § 13.1(b); *O'Connor v. Ford Motor Co.*, Case No. 19-cv-5045, 2023 WL 130522, at *4–6 (N.D. Ill. Jan. 9, 2023) (citing *K.F.C. v. Snap Inc.*, 29 F.4th 835 (7th Cir. 2022) and *CCC Intelligent Solutions Inc. v. Tractable Inc.*, 36 F.4th 721, 723 (7th Cir. 2022)). The validity of an arbitration agreement and whether an agreement can be enforced by a non-signatory are also both governed by state law. *See Faulkenberg v. CB Tax Franchise Systems, LP*, 637 F.3d 801, 809 (7th Cir. 2011) (citation omitted); *Scheurer v. Fromm Family Foods, LLC*, 863 F.3d 748, 752 (7th Cir. 2017) (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)). Plaintiffs' contracts include a choice-of-law provision selecting "the applicable law of the state where [plaintiffs] reside." *See* [99-4] at 14. Plaintiffs are residents of Illinois, *see* [28] ¶¶ 3–4, and the parties agree that Illinois law applies. *See* [92] at 15; [99] at 13 n.7.

4

(7th Cir. 2021) (citing *Marque Medicos Farnsworth, LLC v. Liberty Mut. Ins. Co.*, 427 Ill.Dec. 218, 222 (1st Dist. 2018)). To overcome the presumption, the contract must strongly suggest that it applies to third parties—so strongly as to be practically an express declaration. *See id.* (quoting *155 Harbor Drive Condo. Ass'n v. Harbor Point Inc.*, 209 Ill.App.3d 631, 647 (1st Dist. 1991)). To create a third-party beneficiary, the contract must have been made for the direct benefit of the third party, an intention which "must be shown by an express provision in the contract identifying the third party beneficiary by name or by description of a class to which the third party belongs." *Id.* (quoting *Martis v. Grinell Mut. Reinsurance Co.*, 388 Ill.App.3d 1017, 1020 (3d Dist. 2009)). The third party bears the burden of showing that the parties to the contract intended to confer a direct benefit. *See Martis*, 388 Ill.App.3d at 1020 (citing *F.H. Paschen/S.N. Nielsen, Inc. v. Burnham Station, L.L.C.*, 372 Ill.App.3d 89, 96 (1st Dist. 2007)).

Plaintiffs' contracts with Uber don't mention Microsoft. *See* [99-4]. But the agreements describe a class to which defendant belongs, because Microsoft is "an entity" which whom plaintiffs are engaged in a dispute "arising out of or related to [their] application for and use of an account to use [Uber's] Platform and Driver App as a driver." *Id.* at 15. Kashkeesh and Komorski argue that the class isn't defined specifically enough to show that the signing parties intended to confer a benefit on Microsoft. *See* [99] at 14. Yet this class is limited in two ways: it includes (1) only those entities with whom plaintiffs are engaged in a dispute and (2) only a particular subject—plaintiffs' use of Uber's platform and driver app as a driver. *See* [99-4]. The

5

class didn't need to be more specifically defined in order to show an intention to confer a benefit. *See Long v. Loft Rehabilitation & Nursing of Canton*, LLC, 2022 IL App (4th) 220649-U ¶¶ 36–37; *Smith v. Bank of America, N.A.*, No. 17-cv-00286, 2019 WL 1190946, at *2–3 (N.D. Ill. May 15, 2019).[4]

Plaintiffs contend that other parts of the agreement—which says that it applies to Uber agents and employees and includes an address for Uber where plaintiffs can demand arbitration in writing—mean that they and Uber never intended to confer third-party beneficiary status on Microsoft. *See* [99] at 15–16; [99-4] at 15, 17. I disagree. The contract doesn't say that the arbitration agreement is limited to claims against Uber, its agents, and employees, *see* [99-4] at 13.1(a), and § 13.1(c) of the agreement specifies that disputes against other entities are also covered. That the contract only provided contact information for Uber (and required plaintiffs to demand arbitration in writing) is some evidence against Microsoft's third-party beneficiary status. *See Sosa v. Onfido, Inc.*, No. 1:20 CV 04247, 2021 WL 38141, at *4 n.4 (N.D. Ill. Jan. 5, 2021); *Johnson v. Mitek Systems, Inc.*, No. 22 C 349,

---

[4] That other potential categories of third-party beneficiaries described in the same part of the agreement may be overbroad, *see* [99-4] at 15, [99] at 14–15, doesn't mean that the class at issue (which is more narrowly defined) is unenforceable. *See* [99-4] at 13, § 12.2 (the contract includes a severability clause). The contract elsewhere expressly conveys third-party beneficiary status on other parties. *See* [99-4] at 15, § 13.1(a). But that doesn't mean that the parties didn't also intend to confer that status through the description of a class in another provision. *See id.* at 15, § 13.1(c); *Sosa v. Onfido Inc.*, 8 F.4th 631, 639 (7th Cir. 2021). *Johnson* is distinguishable, because the third party at issue in that case did not clearly fit into a class of third-party beneficiaries described in a contract. *See Johnson v. Mitek Systems, Inc.*, No. 22 C 349, 2022 WL 1404749, at * 3 (N.D. Ill. May 4, 2022). Here, by contrast, plaintiffs' claims against Microsoft arise out of their use of Uber's platform and driver app while plaintiffs were drivers, which means Microsoft unambiguously fits the category described in the agreement. *See* [99-4] at 15.

2022 WL 1404749, at *4 (N.D. Ill. May 4, 2022). But unlike the situations in *Sosa* and *Johnson*, the agreement in this case also expressly identified other third parties for whom no contact information was provided, *see* [99-4] at 15, § 13.1(a), so including contact information for an entity is not a conclusive sign of the parties' intent to confer third-party beneficiary status. And the description of the class at issue shows that the agreement applies to third parties, including Microsoft.

The parties intended to confer a direct benefit on Microsoft, which means defendant can enforce the agreements.

    **B.    Waiver**

Microsoft qualifies as a third-party beneficiary to Kashkeesh's and Komorski's arbitration agreements, but Microsoft waited a long time before asserting its right and has used the court system to advance positions in the dispute. Like other contractual rights, the right to arbitrate a dispute can be waived. *Smith v. GC Services Limited P'ship*, 907 F.3d 495, 499 (7th Cir. 2018) (citing *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prod. Co.*, 969 F.2d 585, 590 (7th Cir. 1992)). A party can expressly waive a right to arbitrate, or it can implicitly waive the right (similar to a forfeiture in the criminal law context). *See id.*; *Brickstructures, Inc. v. Coaster Dynamix, Inc.*, 952 F.3d 887, 891 (7th Cir. 2020).

There's no evidence that Microsoft expressly gave up its right to arbitrate with these plaintiffs. Instead, Kashkeesh and Komorski argue that Microsoft implicitly waived or forfeited the right to arbitrate by 1) removing the case to federal court, 2) participating in informal and formal discovery related to a motion to dismiss, and 3)

7

failing to raise arbitration until twenty months after the case was removed to federal court. *See* [99] at 6–13. Microsoft responds that it couldn't have waived a right it didn't know it had and never took an action inconsistent with arbitration. *See* [103] at 4–12.

Microsoft implicitly waived (forfeited) the right to arbitrate if, considering the totality of the circumstances, it acted inconsistently with arbitration. *See Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 950 (7th Cir. 2020) (citing *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prod., Inc.*, 660 F.3d 988, 994 (7th Cir. 2011)). Relevant factors include the diligence of the party seeking arbitration, meaning whether Microsoft did "all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration." *Smith*, 907 F.3d at 499 (quoting *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995)). Courts also consider whether the party participated in litigation, substantially delayed its request for arbitration, participated in discovery, and whether the nonmoving party was prejudiced by the delay in seeking arbitration. *Kawasaki*, 660 F.3d at 994 (citing *St. Mary's*, 969 F.2d at 589–91).

In *Morgan*, the Supreme Court rejected a requirement of prejudice to a non-moving party to demonstrate waiver. *See Morgan v. Sundance, Inc.*, 142 S.Ct. 1708, 1712–14 (2022). *Morgan* concluded that the correct inquiry for waiver was whether a party "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right." *Id.* at 1714. Microsoft suggests that *Morgan* means that a party can only

8

be found to have given up the right to arbitrate if it had actual knowledge of that right. *See* [103] at 4–5. I disagree. *Morgan* didn't foreclose the possibility that a party could implicitly waive or forfeit the right to arbitrate by failing to adequately investigate the possibility of arbitration. *See Morgan*, 142 S.Ct. at 1712–14; *see also White v. Samsung Electronics America, Inc.*, 61 F.4th 334, 338–41 (3d Cir. 2023) (applying the rule from *Morgan* and finding waiver despite the fact that a party may have lacked actual knowledge of a right to arbitrate); *Smith*, 907 F.3d at 498–99 (noting that in this circuit the term waiver has been used to encompass implicit abandonment of rights, also known as forfeiture). *Morgan* remanded the case to allow the lower courts to consider whether "a different procedural framework (such as forfeiture) is appropriate." *Morgan*, 142 S.Ct. at 1714. Knowledge of a right is relevant to forfeiture, however, because knowledge can inform the timeliness of the assertion. A reckless indifference to a right to arbitrate and the use of judicial dispute resolution instead is a strong sign that a party wasted time, and should not be allowed to invoke a right that it could have asserted sooner. *See Cabinetree*, 50 F.3d at 391 ("Selection of a forum in which to resolve a legal dispute should be made at the earliest possible opportunity in order to economize on the resources, both public and private, consumed in dispute resolution.").

Microsoft removed this case in June 2021, but didn't mention arbitration until January 2023, twenty months after litigation began in federal court. *See* [1]; [85]. Microsoft says that it didn't learn that plaintiffs had agreed to the 2020 Platform Access Agreement (with its arbitration clause) until December 13, 2022, but doesn't

9

explain why it didn't learn about the agreements sooner. *See* [94]; [92] at 11. This lengthy delay shows a lack of diligence. Microsoft is a sophisticated corporation, should have been aware that Uber's contracts might have included arbitration agreements, and had ample opportunity to investigate. *See Smith*, 907 F.3d at 500. Versions of Uber's driver agreements—including the 2020 version—were available online, which would have prompted a diligent party to investigate further. *See* Uber 2020 Platform Access Agreement (available at https://tinyurl.com/2mucdpt4) (last visited June 25, 2023); *Smith*, 907 F.3d at 500 (finding that a sophisticated company could have found an arbitration agreement "through a routine internet search.").

Microsoft argues that it couldn't have done more to figure out whether plaintiffs had agreed to arbitrate because it didn't know which version of Uber's agreements was operative or whether Kashkeesh and Komorski had opted out of arbitration. *See* [103] at 5. But information about plaintiffs' particular contractual relationships was available at Uber, as Microsoft concedes. *See id.* Defendant's counsel was talking to Uber representatives as of August 2021, yet evidently failed to ask Uber for information about plaintiffs' contracts. *See* [99-1]. Given Microsoft's sophistication, its awareness that plaintiffs' employment was governed by contracts, and defendant's communications with Uber, Microsoft could have been more diligent in confirming arbitrability early in the litigation. *See Smith*, 907 F.3d at 500; *White v. Samsung Electronics America, Inc.*, 61 F.4th 334, 340 (3d Cir. 2023) (a company that knew claims could be arbitrable but failed to investigate further acted inconsistently with the right to arbitrate).

10

In addition to a lack of diligence leading to a lengthy delay, Microsoft removed the case, manifesting an intention to resolve the dispute in federal court. *See Cabinetree*, 50 F.3d at 390. And defendant participated in litigation, filing a motion to dismiss and participating in related discovery, which involved some litigation over facts related to the merits of the dispute (how Microsoft's technology works). *See* [23]; [32]; [42]; [64]; [99-1]. Because the district court in ruling on the motion to dismiss made factual findings that may be relevant to some of Microsoft's defenses, *see* [99] at 11–12; [82]; [85], the delay in seeking arbitration has led to some limited prejudice for plaintiffs, who might need to relitigate these issues in arbitration, and would also need to pay new filing fees. *See* [99-4] at 18.[5]

Microsoft's lack of diligence, removal, and (limited) participation in litigation are all inconsistent with arbitration. Yet while invoking judicial process presumptively waives a right to arbitration, that presumption can be rebutted in abnormal cases. *See Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995). This is one of them. Microsoft was at most negligent (not reckless or intentional) in failing to identify whether plaintiffs' claims could be

---

[5] Defendant argues that prejudice is no longer relevant to a waiver analysis after *Morgan*. *See* [103] at 11 (citing *Morgan v. Sundance*, 142 S.Ct. 1708 (2022)). *Morgan* says that prejudice to a non-moving party isn't a requirement for the usual federal rule of waiver. *See Morgan*, 142 S.Ct. at 1714. But that doesn't mean that prejudice isn't relevant. *See Smith v. GC Services Limited P'Ship*, 907 F.3d 495, 500–02 (7th Cir. 2018). *But see Hill v. Xerox Bus. Services*, 59 F.4th 457, 475 (9th Cir. 2023) (prejudice to a non-moving party is immaterial). Like knowledge, prejudice can inform an assessment of timeliness and the discretionary decision to enforce or forgive a forfeiture. In any event, the prejudice to plaintiffs in this case is slight, since the court's factual determinations in its ruling on the motion to dismiss were merely preliminary. *See* [82].

11

arbitrated earlier. [6] And Microsoft's participation in the case—responding to plaintiffs' motion to remand, filing a motion to dismiss for lack of personal jurisdiction, responding to plaintiffs' discovery requests—was largely responsive,[7] and did not seek a merits determination in court. *See Smith v. GC Services Limited P'Ship*, 907 F.3d 495, 501 (7th Cir. 2018) (quoting *Kawasaki Heavy Industries, Ltd. v. Bombardier Recreational Products, Inc.*, 660 F.3d 988, 995 (7th Cir. 2011)) ("When a motion to dismiss raises jurisdictional or procedural arguments for dismissal, the party has not 'submit[ed] the case to the court for a decision that resolves the dispute.'"); *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726–27 (7th Cir. 2004) (citations omitted); *Skyline Restoration, Inc. v. First Baptist Church*, No. 17 C 1234, 2017 WL 6570077, at *2–3 (N.D. Ill. Dec. 21, 2017) (citation omitted) (finding that responsive conduct, including responding to discovery requests, did not demonstrate an election to proceed in federal court).

There's no evidence that Microsoft knew about the possibility of arbitration earlier, which means that responsibility for the delay in reaching the merits of the dispute is shared by all of the parties and the court (which have spent significant time on preliminary issues, including filing amended complaints, a motion remand, and

---

[6] *See Herrera v. Mana 2nd Ave. LLC*, 1:20-cv-11026-GHW, 2022 WL 2819072, at *6–9 (S.D.N.Y. July 18, 2022) (citations omitted) (waiver of a right cannot be predicated on oversight or thoughtlessness); *Alvarez v. Experian Information Solutions, Inc.*, 19-CV-03343, 2023 WL 2519249, at *11 (E.D.N.Y. Mar. 15, 2023) (negligence is not enough to find waiver).

[7] Microsoft's responsive role in the litigation distinguishes this case from *Breedlove v. Santander Consumer USA, Inc.*, No. 1:20-cv-01051-JMS-DML, 2021 WL 3879070, at *4–6 (S.D. Ind. Aug. 26, 2021), and *Lukis v. Whitepages, Inc.*, 535 F.Supp.3d 775, 787–90 (N.D. Ill. 2021).

the motions to dismiss). Unlike the facts in *Smith*, once Microsoft learned of its potential right to arbitrate, defendant promptly informed the court and plaintiffs, and then quickly moved to compel arbitration. *Cf. Smith*, 907 F.3d at 500. Plaintiffs have suffered from the delay, and may lose some benefits of factual determinations related to the merits of their dispute. Yet that prejudice doesn't derive from Microsoft having implied that it intended to litigate the merits in this court.

Microsoft could have been more diligent in identifying its right to arbitrate this dispute. But because defendant's participation in litigation was not merits-based and Microsoft didn't hesitate once it learned about the contracts, Microsoft hasn't acted inconsistently with arbitration. Although a close case, the context here does not demonstrate an untimely assertion of a right amounting to forfeiture. Microsoft's negligence and the passage of time is outweighed by all of the steps Microsoft did take to avoid litigation on the merits—disputing personal jurisdiction and then invoking its right to arbitrate promptly after confirmation of its availability.

## IV. Conclusion

Defendant's motion, [91], is granted. Plaintiffs must arbitrate their claims against Microsoft and this case is stayed pending arbitration. The parties shall file a report on the status of arbitration proceedings on September 26, 2023.

ENTER:

Date: June 26, 2023

Manish S. Shah
U.S. District Judge